NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3864
_____

UNITED STATES OF AMERICA

v.

JAMES CLINTON COOK,
a/k/a James Linden Miller

James Clinton Cook,

                                        Appellant

_____

On Appeal from United States District Court
for the Western District of Pennsylvania
(D.C. No. 09-cr-00004)
District Judge: Honorable Kim R. Gibson
_____

Submitted Under Third Circuit LAR 34.1(a)
June 23, 2011

Before: HARDIMAN, GREENBERG, *Circuit Judges*
and POLLAK,[*] *District Judge*

(Filed: June 27, 2011)
_____

OPINION OF THE COURT
_____

---

[*]The Honorable Louis H. Pollak, Senior District Judge for the United States District
Court for the Eastern District of Pennsylvania, sitting by designation.

HARDIMAN, *Circuit Judge*.

James Clinton Cook appeals his judgment of sentence. We will affirm.

I

Because we write for the parties, who are familiar with the facts and procedural history of the case, we summarize them only briefly.

For more than 50 years, Cook fraudulently used the name of a now-deceased man named James Linden Miller. In January 2008, Cook used Miller's name and social security number to apply for a replacement social security card, which he needed to maintain a commercial driver's license in Miller's name. When a search of the Social Security Administration's database revealed that Miller died in 1993, the agency's Office of the Inspector General commenced an investigation into Cook. Investigators interviewed Cook six months later, at which time he admitted to using the false name for more than five decades.[1] Investigators also discovered that Cook used at least one other social security number belonging to a now-deceased woman named Rose M. Bertoch. Cook had this number tattooed on his right wrist.

In 1994, Cook began receiving Supplemental Security Income (SSI) from the Social Security Administration. Because Cook used his real name when he applied for these benefits, he was able to withhold information from the agency that would have

---

[1] Although he claimed he had a personal reason for choosing the name James Linden Miller, he could not explain how the social security number that he used in conjunction with the name belonged to a real James Linden Miller.

2

resulted in the denial or termination of benefits. Specifically, he failed to note in his initial application that he was married under the Miller alias or that his wife had income. Additionally, he later failed to report that he received an $87,059.12 settlement in a civil suit, which he also brought under the name Miller. From 1994 until 2008, Cook received $40,689.53 in SSI payments to which he was not entitled.

On May 6, 2010, Cook pleaded guilty to one count of knowingly and willfully making materially false statements in violation of 18 U.S.C. § 1001(a)(2) and one count of converting property of the United States in violation of 18 U.S.C. § 641. The District Court adopted the Presentence Report's calculation under the United States Sentencing Guidelines (USSG) and found that Cook's total offense level of 10 and his Criminal History Category of VI yielded a Guidelines range of 24–30 months. Cook moved for departures under USSG §§ 4A1.3(b)(1), 5H1.1, and 5H1.4, arguing that his criminal history overstated the seriousness of his prior crimes and that his age and poor health commended a lighter sentence. After considering these arguments, declining to depart, and applying the sentencing factors listed in 18 U.S.C. § 3553(a), the District Court imposed a bottom-of-the-Guidelines sentence of twenty-four months imprisonment, two years of supervised release, and restitution of $40,689.53.

Cook appeals, claiming the District Court "misapprehended its legal authority" to depart downward and failed to meaningfully consider the § 3553(a) factors.[2]

## II

We have reviewed Cook's arguments and find them tendentious at best and, at worst, a distortion of the record. Latching on to one phrase ("no legal basis") in the District Court's sentencing colloquy, Cook argues that a remand is required because the District Court did not appreciate its discretion to grant his motions for downward departure.

Courts of law do not interpret words—whether they appear in statutes, regulations, contracts, or, as here, sentencing transcripts—in a vacuum. *See, e.g.*, *Davis v. Mich. Dept. of Treasury*, 489 U.S. 803, 809 (1989) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."). A review of the proceedings below demonstrates that the District Court understood well its discretion to grant downward departures. Indeed, each time the Court stated that it found "no legal basis" for granting the departures sought by Cook, it stated: "[a]nd, additionally, [the Court] declines to exercise its discretion to depart from the guidelines for that basis" or "based upon the argument presented." Given the context, it is obvious to anyone but the most myopic reader what the Court was saying—*i.e.*, that it found no basis upon which to grant the

---

[2] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have

4

legal relief that Cook requested. For this Court to reverse the District Court on the ground that it erroneously believed it lacked authority to depart when it explicitly stated during sentencing that it "declines to exercise its discretion to depart" would be the height of absurdity. Because we reject Cook's invitation to pass through the looking glass, "we have no authority to review [the Court's] discretionary denials of departure motions." *United States v. Jackson*, 467 F.3d 834, 839 (3d Cir. 2006).

Cook's second argument fares no better. He claims: "[i]n denying the request for a variance, the district court stated only that it had considered 'each of the factors set forth in 18 U.S.C. § 3553(a),' as well as 'his age and his health and physical condition.'" Appellant's Br. at 27 (citing App. at 143–44). In fact, the District Court's consideration of the § 3553(a) factors goes on for more than four pages and in no way resembles the "cursory discussion" that Cook describes. *See* App. at 143–47. That the District Court did not find Cook's age, health, or allegedly overstated criminal history to be as significant as other factors—*e.g.*, that Cook "appears to have lied and been deceitful for decades," his "criminal history is extensive," his "offense is serious in that it defrauds the government and social security system," and his sentence reflects "[t]he need for the term of imprisonment to reflect punishment and deterrence"—does not mean that the District Court failed to consider them adequately. Rather, we hold that the District Court carefully followed the three-step process laid out in *United States v. Gunter*, 462 F.3d

---

jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

237, 247 (3d Cir. 2006), and gave "meaningful consideration" to the § 3553(a) factors in compliance with *United States v. Merced*, 603 F.3d 203, 215 (3d Cir. 2010). The District Court's explication of its bottom-of-the-Guidelines sentence went well beyond the minimum required and Cook's argument to the contrary betrays a lack of understanding of the Supreme Court's decision in *United States v. Rita*, 551 U.S. 338, 359 (2007) ("Where a matter is as conceptually simple as in the case at hand and the record makes clear that the sentencing judge considered the evidence and arguments, we do not believe the law requires the judge to write more extensively.").

We will affirm the judgment of the District Court.