Justice Ginsburg,
concurring in part and dissenting in part.
Section 6 of the Longshore and Harbor Workers’ Compensation Act (LHWCA or Act) defines the maximum disability benefit an injured worker may receive under the Act. Specifically, § 6 states that an injured employee may receive, at most, twice the national average weekly wage for the fiscal year in which the employee is “newly awarded compensation.” 33 U. S. C. § 906(c). The Court granted review in this case to answer the following question: When is an employee “newly awarded compensation”?
Petitioner Dana Roberts contends that an employee is “newly awarded compensation” in the year she receives a formal compensation award. For the reasons cogently explained by the majority, that argument is untenable. See ante, at 100-111. Unlike the Court, however, I do not regard as reasonable respondent Sea-Land Services’ view that an employee is “newly awarded compensation” in the year she becomes “statutorily entitled to compensation.” Ante, at 100 (internal quotation marks omitted). Applying the common meaning of the verb “award” and recognizing the Act’s distinction between benefits paid voluntarily, and those paid *114 pursuant to a compensation order, see ante, at 97-98,1 would hold that an injured worker is “newly awarded compensation” when (1) the employer voluntarily undertakes to pay benefits to the employee, or (2) an administrative law judge (ALJ), the Benefits Review Board (BRB), or a reviewing court orders the employer to pay such benefits.
I
In determining the meaning of a statutory phrase, “we look first to its language, giving the words used their ordinary meaning.” Moskal v. United States, 498 U. S. 103, 108 (1990) (internal quotation marks and citation omitted). As the Court acknowledges, ante, at 100, the verb “award” ordinarily means “to give by judicial decree” or “[to] assign after careful judgment.” Webster’s Third New International Dictionary 152 (2002). See also Black’s Law Dictionary 157 (9th ed. 2009) (defining the verb “award” as “[t]o grant by formal process or by judicial decree”). Giving “award” this usual meaning, an employee is “newly awarded compensation,” if not voluntarily paid, in the fiscal year in which payment is directed by administrative order or judicial decree.
Under the LHWCA, the Court recognizes, an employee is provided compensation voluntarily or in contested proceedings. See ante, at 98. Most commonly, an employer pays compensation voluntarily after receiving an employee’s notice of disabling injury. See Pallas Shipping Agency, Ltd. v. Duris, 461 U. S. 529, 532 (1983); 33 U. S. C. §912 (describing the form, content, and timing of the necessary notice and requiring employers to designate a representative to receive the notice); § 914(b). If an employer declines to pay compensation voluntarily, an injured employee can file a claim with the Department of Labor’s Office of Workers’ Compensation Programs (OWCP). For employees with valid claims, OWCP proceedings culminate with an administrative or court decision ordering the employer to pay *115 benefits. §919(c). .Thus, an injured worker is given — or “awarded” — compensation through one of two means contemplated by the Act: either the employer voluntarily pays compensation or is officially ordered to do so. Logically, then, the worker is “newly awarded compensation” when one of those two events occurs.
The Court does not take this approach. After acknowledging that it is not relying on the typical meaning of the word “award,” see ante, at 100, the Court adopts Sea-Land’s view that “awarded compensation” is synonymous with “[became] statutorily entitled to benefits,” ante, at 113. As a result, a person is “newly awarded compensation” in the year in which she becomes entitled to benefits — i. e., in the year the employee “first becomes disabled.” Ibid. Such a reading is plausible, the Court asserts, because “this Court has often said that statutes ‘award’ entitlements.” Ante, at 101 (citing cases).
I do not dispute that statutes are often characterized as “awarding” relief to persons falling within their compass. But “a statute must be read in [its] context.” Ibid. (quoting Davis v. Michigan Dept. of Treasury, 489 U. S. 803, 809 (1989)). Section 906 does not address whether the LHWCA, as a general matter, “awards” disability benefits to injured longshore workers. Rather, it concerns a more specific question: When has a particular employee been “newly awarded compensation.” In that context, equating “awarded compensation” with “statutorily entitled to compensation” is not plausible. A person covered by the Act would not likely say he was “awarded compensation” the moment he became disabled, if, in fact, his employer contests liability. Only after some entity — the employer, an AU, the BRB, or a reviewing court — recognizes the employee’s right to compensation would he comprehend that he had been “awarded compensation.” To borrow The Chief Justice’s example: No person who slips and injures herself on a negligently maintained sidewalk would tell her friends the next *116 day, “Guess what, I was newly awarded money damages yesterday.” See Tr. of Oral Arg. 28.
The inconsistency between the Court’s interpretation of “newly awarded compensation” and my reading of the phrase is best illustrated by contextual example. Assume an employee is injured in 2002 and the employer refuses to pay compensation voluntarily. Then, five years later, an ALJ finds in favor of the employee and orders the employer to pay benefits to the employee. Under the Court’s view, the employee was “newly awarded compensation” in 2002, even though the employee did not receive a penny — and the employer was not obligated to pay a penny — until 2007. Only the most strained interpretation of “newly awarded” could demand that result.[1]
The Court’s view, moreover, does not fit the Act’s design. As explained supra, at 114-115, the Act envisions that an eligible employee will begin receiving benefits in either of two ways. The Court’s interpretation disregards this design, assuming instead that all employees are awarded benefits in the same way: by the Act at the time they become disabled.
Section 906(c)’s legislative history further confirms that Congress intended “newly awarded compensation” to have its commonsense meaning. In describing §906, the Senate Committee on Labor and Public Welfare reported:
“[Section 906(c)] states that determinations of national average weekly wage made with respect to a [fiscal year] *117 apply to employees or survivors currently receiving compensation for permanent total disability or death benefits, as well as those who begin receiving compensation for the first time during the [fiscal year].” S. Rep. No. 92-1125, p. 18 (1972) (emphasis added).
Congress therefore believed an injured worker is “newly awarded compensation” in the year in which she “begin[s] receiving compensation for the first time.” Ibid. Again, an employee begins receiving compensation either when an employer voluntarily agrees to pay the employee benefits or when an AU, the BRB, or a court orders the employer to do so. See supra, at 114-115. When the employer resists payment, the employee will not necessarily begin receiving compensation in the year in which she becomes disabled.
Finally, interpreting “newly awarded compensation” to mean awarded through an employer’s voluntary decision or an official order is consistent with the Act’s goal of encouraging employers to pay legitimate claims promptly. See 33 U. S. C. § 914(a) (requiring employers to pay compensation “periodically, promptly, and directly”); Estate of Cowart v. Nicklos Drilling Co., 505 U. S. 469, 498 (1992) (Blackmun, J., dissenting) (“[T]he Act presumes that employers, as a rule, will promptly recognize their LHWCA obligations and commence payments immediately.”). Under my interpretation, an employer who chooses to contest a valid claim, rather than to pay the claim voluntarily, runs the risk that it may ultimately have to pay the injured employee a higher maximum benefit. For example, if an employer refuses to pay benefits to a worker injured in 2012, and an AU issues an order awarding compensation to the employee in 2015, the fiscal year 2015 maximum rate would apply to the employee’s claim. Had the employer voluntarily begun paying benefits in 2012, on the other hand, the 2012 maximum rate would apply. Under the Court’s reading, by contrast, an employer pays the prevailing rate for the year the employee became *118 disabled, regardless of whether the employer in fact pays benefits immediately or years down the road.[2]
II
In this case, Roberts was injured on February 24, 2002, and stopped working two weeks later. App. to Pet. for Cert. 4. Sea-Land and its insurer paid benefits to Roberts from March 11, 2002, until July 15, 2003. Id., at 101. Sea-Land then resumed paying benefits on September 1, 2003, and continued to pay Roberts compensation until May 17, 2005, when it ceased making payments for good. Ibid. After Roberts filed a complaint with the OWCP, an ALJ, in October 2006, concluded that Roberts was entitled to compensation from March 11, 2002, onwards. Id., at 107-108.
Applying my interpretation of §906, Roberts was newly awarded compensation three times: in March 2002 when Sea-Land voluntarily began paying benefits; in September 2003 when Sea-Land resumed making payments after it had stopped in July 2003; and in October 2006 when an ALJ ordered Sea-Land to pay benefits to Roberts for the uncompensated weeks in 2003 and from May 2005 onwards. Roberts was therefore entitled to the fiscal year 2002 maximum rate from March 11, 2002, until July 15, 2003; the fiscal year 2003 maximum rate from September 1, 2003, until May 17, 2005; and the fiscal year 2007 rate[3] going forward and for all uncompensated weeks covered by the ALJ’s order.[4]
*119 * * *
For the foregoing reasons, I would reverse the Ninth Circuit’s judgment and hold that an employee is “newly awarded compensation” when her employer either voluntarily agrees to pay compensation to her or is officially ordered to do so.

 Employers may have a particularly strong financial incentive to postpone paying claims that implicate § 906. That section applies only to injured workers who qualify for the maximum rate of compensation under the Act — i. e., to those claimants who are owed the largest possible benefit.

 For § 906 purposes, a year runs from October 1 to September 30. See 33 U. S. C. § 906(b)(3). The 2007 maximum rate therefore applies to all employees “newly awarded compensation” between October 1, 2006, and September 30, 2007.

 The Court asserts that an employer could “easily circumven[t]” my approach by making voluntary payments to an injured worker that are substantially below the employee’s “actual entitlement.” Ante, at 105, *119 n. 6. The prospect that an employer could successfully execute, or would even attempt, such a strategy is imaginary. Employers who make voluntary payments to employees are required to file a report with the Department of Labor describing the nature of the employee’s injury and stating the amount of the payments made. See ante, at 104; 33 U. S. C. § 930(a). The employer must'also submit the results of a medical evaluation of the employee’s condition. Dept, of Labor, Longshore (DLHWC) Procedure Manual §2-201(2)(b) (hereinafter Longshore Procedure Manual), online at http://www.dol.gov/owcp/dlhwe/lspm/lspm2-201.htm (as visited Mar. 14, 2012, and in Clerk of Court’s case file). Upon receiving the employer’s report, a Department of Labor claims examiner verifies “the compensation rate for accuracy” and must follow up with the employer “[i]f the compensation rate appears low.” Id., § 2-201(3)(b)(l). The chances are slim that a claims examiner would validate a substantial underpayment. Employers who underpay benefits, moreover, are subject to a penalty equal to 10% of the amount of the underpayment. See 33 U. S. C. § 914(e); Long-shore Procedure Manual §8-202(3)(c) (“If partial payments are made by the employer, the [10% penalty] applies] ... to the difference between the amount owed and the amount paid.”), http://www.dol.gov/owcp/dlhwc/ lspm/lspm8-202.htm. Employers would thus risk paying more, not less, were they to attempt to “circumvenft]” my approach by deliberately un-dercompensating injured workers. And while it is true that an employer who controverts an employee’s right to compensation does not have to pay the 10% penalty, see ante, at 105, n. 6, the Act does not permit an employer to pay any amount it likes and controvert the remainder. See 33 U. S. C. § 914(a) (requiring employers either to pay benefits in full or to controvert “liability to pay compensation” at all).