CLIFTON, Circuit Judge,
concurring in part and dissenting in part:
I fully concur in sections I-IV of the majority opinion. I disagree, however, with the majority’s conclusion in section V that EPA’s approval of the contingency measures in Arizona’s SIP is contrary to the clear language of the CAA. In my view, the scope of the CAA’s contingency measures requirement is ambiguous and EPA’s reasonable interpretation of that requirement is entitled to deference.
Like the majority, I begin by analyzing the text of the relevant statutory provision, 42 U.S.C. § 7502(c)(9). That section of the CAA requires state nonattainment plans to include contingency measures “to be undertaken” and “to take effect” in the event that an area “fails to make reasonable further progress, or to attain” the NAAQS by the applicable attainment date. Id. Although I agree with the majority that this language most often refers to measures that are to be implemented in the future, in the event that the other measures included in a state’s SIP are not sufficient to meet CAA requirements, I am not persuaded that the provision’s text forecloses the interpretation advanced by EPA and applied in this case.
The language of the statute prohibits states from labeling as “contingency measures” the same proposed reductions relied upon to achieve NAAQS compliance. See La. Envtl. Action Network v. EPA, 382 F.3d 575, 583 (5th Cir. 2004) (“Such a prospective reading of the text would seemingly preclude the use of past reductions which have already failed to achieve attainment.”). It requires states to identify additional measures that must be put into effect without further action by the state or EPA if reasonable progress is not made or the air quality standard is not met by the attainment date. Those additional measures are what the statute describes as “contingency measures.”
Arizona’s SIP identified additional measures that were not relied upon to obtain the anticipated compliance. The practical issue before us in this case is whether Arizona was prohibited from putting those additional measures into effect in advance. The majority opinion concludes that it was, that the state’s contingency measures must be left undone, sitting on the sidelines in reserve. I do not believe that the language or intent of the statute requires that conclusion.
The early implementation of infrastructure improvements that are expected to result in additional and continuing emissions reductions is consistent with the language of § 7502(c)(9). These early-implemented contingency measures result in a net reduction in emissions following their implementation. They “take effect” and are “undertaken” not only at the time they are first implemented but also thereafter, including at the time they might formally be required due to nonattainment. So long as *1238 these reductions are not relied upon to meet other CAA requirements, they function as a backup plan, reducing the likelihood that the state will fail to attain the NAAQS even in the “contingency” that the measures explicitly included in the SIP for that purpose are not enough.
The majority responds by asserting that the statute “defines contingency measures as measures ‘to be undertaken’ or ‘to take effect’ if a future event occurs, namely ‘if the area fails to make reasonable further progress, or to attain the [NAAQS].’ ” Majority opinion at 1236 (emphasis in original). But this language fits just as well with EPA’s interpretation as it does with the view of the majority. In both scenarios, the contingency measures must be in effect at the time an area fails to achieve the goals outlined in the SIP. What is at issue here is whether states are prohibited from also implementing the. measures before that “future event occurs.” The language quoted by the majority contains no such prohibition and it is not our role to read one into the statute.
EPA’s interpretation also comports well with the purpose of the CAA. “In determining whether Congress has specifically addressed the question at issue, a reviewing court should not confine itself to examining a particular statutory provision in isolation.... It is a ‘fundamental canon of statutory construction that the words óf a statute must be read in their context and with a view to their place in the overall statutory scheme.’ ” FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 132-33, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000) (quoting Davis v. Mich. Dept. of Treasury, 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989)).
Allowing states to implement contingency measures before they are triggered makes sense in light of that same provision’s requirement that such measures “take effect ... without further action by the State or the Administrator.” That requirement, read in context with the Act’s mandate that states implement emission-control measures “as expeditiously as practicable,” id. § 7502(c)(1), evinces a clear congressional preference that contingency measures operate to reduce the emission of harmful pollutants in as efficient and timely a manner as possible. Taking this statutory purpose into account, “it seems illogical to penalize nonattainment areas that are taking extra steps, such as implementing contingency measures prior to a deadline” as a cushion to ensure NAAQS compliance and prevent the need for the contingency measures requirement to be triggered in the first place. La. Envtl. Action Network, 382 F.3d at 584. It does not benefit ordinary citizens to read the CAA to incentivize states to hold off from purchasing new street sweepers or repaving their roads until the contingency measures requirement is triggered.
The majority’s interpretation also imposes an additional and unnecessary burden upon states in circumstances where the failure to attain the NAAQS also triggers a bump up of an area’s classification under the Act. For example, the failure of a moderate nonattainment area to achieve NAAQS compliance by the applicable deadline triggers both § 7502(c)(9)’s contingency measures requirement and the additional requirements imposed upon serious nonattainment areas. 42 U.S.C. § 7513(b)(2). The early implementation of contingency measures allows states in this situation to focus their' efforts on implementing the newly imposed requirements while the contingency measures continue to operate in the interim. See La. Envtl. Action Network, 382 F.3d at 583.[1]
*1239 I recognize that what is lost by EPA’s interpretation of the statute is the advance identification of “still more” measures aimed at improving air quality that can be newly and additionally implemented in the event of nonattainment. If Arizona’s SIP does not reach its goal, then reliance upon contingency measures that have already been put into effect will not further reduce airborne particulate matter, and more will have to be done at that point. But EPA applied its expertise and exercised its judgment in concluding that the goal was likely to be reached by the measures proposed in the SIP, without regard to the additional contingency measures. By letting Arizona identify actions that have already been implemented as contingency measures, EPA has obtained a cushion. It is not an unreasonable judgment for EPA to conclude that implementing the cushion right away is more valuable than advance identification of what else might be done, if necessary. -
For these reasons, I would give Chevron deference to the EPA’s interpretation of § 7502(c)(9). I respectfully dissent from the majority’s conclusion to the contrary.

. The majority argues that because contingency measures must take effect "without further *1239 action by the State" or EPA, 42 U.S.C. § 7502(c)(9), they "cannot distract a state from meeting the other CAA requirements.” Majority opinion at 1236 n. 11. However, EPA has interpreted this language to require only "that no further rulemaking activities by the State or EPA would be needed to implement the contingency measures.” Greenbaum v. EPA, 370 F.3d 527, 541 (6th Cir. 2004) (quoting State Implementation Plans; General Preamble for the Implementation of Title I of the Clean Air Act Amendments of 1990, 57 Fed. Reg. 13498, 13512 (Apr. 16, 1992)). Thus, under the majority’s interpretation, states would still be required to perform the actual business of implementing the identified contingency measures at the same time they address other requirements imposed by a failure to attain the NAAQS.