Opinion for the court filed by Circuit Judge NEWMAN.
, Concurring in part opinion filed by Circuit Judge WALLACH.
NEWMAN, Circuit Judge.
Siemens Energy, Inc., an importer of utility scale wind towers, appeals the decision of the Court of International Trade, which upheld the International Trade Commission’s (ITC or Commission) final affirmative injury determination in the an-tidumping and countervailing duty investigations of utility scale wind towers from the People’s Republic of China and in the antidumping duty investigation of utility scale wind towers from the Socialist Republic of Vietnam (together, the subject merchandise).[1] The judgment is affirmed.
DISCUSSION
The Department of Commerce determined that the subject merchandise was sold in the United States at less than fair value and that it received countervailable subsidies, and the ITC made an affirmative determination of material injury to the domestic industry. The determination was by divided vote of the six-member Commission; the issues on appeal concern the interpretation and effect of the divided vote.
19 U.S.C. § 1677(11) (2012) provides that an evenly divided vote is deemed an affirmative determination:
Affirmative determinations by divided Commission .... If the Commissioners voting on a determination by the Commission ... are evenly divided as to whether the determination should be affirmative or negative, the Commission shall be deemed to have made an affirmative determination.
*1369 § 1677(11). The issue arises because the divided vote was not a simple three-to-three split on the question of material injury to the domestic industry; instead, two Commissioners found present material injury and one Commissioner found threat of material injury, while three Commissioners found that there was neither material injury nor threat of material injury. Siemens challenges the protocol of including threat of injury with actual injury, and argues that since four Commissioners found no present material injury, the ITC and the Court of International Trade erred in deeming the vote a tie. Siemens also argues that the findings of present material injury and threat of injury are incorrect.
I
On appeal from the Court of International Trade’s review of Title 19 determinations by the ITC, this court applies the same standard of review as did the Court of International Trade. Fedmet Res. Corp. v. United States, 755 F.3d 912, 918 (Fed.Cir.2014). Thus we determine whether the Commission’s determination is “unsupported by substantial evidence on the record, or otherwise not in accordance with law.” 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence is “such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.” Universal Camera Corp. v. NLRB, 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951). It need not be a preponderance, but must be “more than a scintilla.” Id. (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).
Support by substantial evidence is determined on the entirety of the record, taking into account the evidence that supports and the evidence that detracts from the agency’s conclusion. Id. at 488, 71 S.Ct. 456. In turn, when reviewing a divided vote of the Commission, each category of inquiry that contributes to the tie is separately determined, in implementation of the statute:
19 U.S.C. § 1677(11). For the purpose of applying this paragraph when the issue before the Commission is to determine whether there is&emdash;
(A) material injury to an industry in the United States,
(B) threat of material injury to such an industry, or
(C) material retardation of the establishment of an industry in the United States,
by reason of imports of the merchandise, an affirmative vote on any of the issues shall be treated as a vote that the determination should be affirmative.
The ITC statute thus foresaw possible factual variations, and Congress established that a tie vote produces an affirmative determination of injury.
A. Finding of Material Injury
The criteria for determination of material injury are set by statute:
19 U.S.C. § 1677(7)(B). When considering whether a domestic industry is materially injured by imports of like products, the Commission:
(i) shall consider&emdash;
(I) the volume of imports of the subject merchandise,
(II) the effect of imports of that merchandise on prices in the United States for domestic like products, and
(III) the impact of imports of such merchandise on domestic producers of domestic like products, but only in the context of production operations within the United States; and
(ii) may consider such other economic factors as are relevant to the determina *1370 tion regarding whether there is material injury by reason of imports.
The period of investigation for this petition covered 2009 through the first six months of 2012.
Two Commissioners, Chairman Williamson and Commissioner Aranoff, found material injury to the domestic industry. As to the volume of imports of subject merchandise, these Commissioners found “the volume of subject imports and the increase in volume to be significant, both in absolute terms and relative to consumption and production in the United States.” ITC Views at *15. These Commissioners found that the imports’ continuing growth in market share, accompanied by price suppression, “played a role in precluding the domestic industry from increasing production to take advantage of the increase in apparent consumption.” Id. at *16.
Turning to the price effects of the subject imports, these Commissioners found that although both import and domestic prices were rising and the imported wind towers had a higher total delivered cost than comparable domestic wind towers, the price gap was shrinking and potential customers were using the imports to put pressure on domestic prices. They stated:
We find that although [original equipment manufacturers] ultimately are concerned with total delivered cost, they do not agree to purchase wind towers from the closest available source without regard to f.o.b. pricing. Rather, they negotiate with the domestic producers regarding f.o.b. prices, the largest component of delivered cost.
Id. at *18.
With respect to the impact of subject imports, these Commissioners found that the growing volume of the imports suppressed domestic prices, and that the domestic industry experienced “steep declines in operating income” between 2009 and 2012. Id. at *21. Taken together, Commissioners Williamson and Aranoff determined that there was material injury to the domestic industry.
On appeal to the Court of International Trade, and now to this court, Siemens argued that these findings are not supported by substantial evidence. Siemens states that these two Commissioners incorrectly compared the f.o.b. prices of the imports, instead of delivered costs, and that they accepted the false information that domestic producers had the capacity to supply the domestic market, at least at certain locations in the United States. Siemens also states that the domestic industry was subject to operational inefficiencies, and that production during the period of investigation was slowed by the expected non-renewal of the Production Tax Credit and other tax incentives, whereby domestic producers chose not to expand capacity, in view of potential reduced demand.
The Court of International Trade considered the arguments, and concluded that the two Commissioners’ findings of material injury are supported by substantial evidence on the record as a whole. The evidence of increasing import volume, price pressure and price suppression, unused domestic capacity, reduced income, and enlarging operating losses, supports these Commissioners’ finding of material injury to the domestic industry. See Consol. Edison Co., 305 U.S. at 229, 59 S.Ct. 206.
B. Finding of Threat of Material Injury
Commissioner Pinkert found that the domestic industry was threatened with material injury, applying the statutory factors for determining threat of injury:
*1371 19 U.S.C. § 1677(7)(F)(i). In determining whether an industry in the United States is threatened with material injury by reason of imports (or sales for importation) of the subject merchandise, the Commission shall consider, among other relevant economic factors:
(I) if a countervailable subsidy is involved, such information as may be presented to it by the administering authority as to the nature of the subsidy (particularly as to whether the counter-vailable subsidy is a subsidy described in Article 3 or 6.1 of the Subsidies Agreement), and whether imports of the subject merchandise are likely to increase,
(II) any existing unused production capacity or imminent, substantial increase in production capacity in the exporting country indicating the likelihood of substantially increased imports of the subject merchandise into the United States, taking into account the availability of other export markets to absorb any additional exports,
(III) a significant rate of increase of the volume or market penetration of imports of the subject merchandise indicating the likelihood of substantially increased imports,
(IV) whether imports of the subject merchandise are entering at prices that are likely to have a significant depressing or suppressing effect on domestic prices, and are likely to increase demand for further imports,
(V) inventories of the subject merchandise,
[...]
(VIII) the actual and potential negative effects on the existing development and production efforts of the domestic industry, including efforts to develop a derivative or more advanced version of the domestic like product, and
(IX) any other demonstrable adverse trends that indicate the probability that there is likely to be material injury by reason of imports (or sale for importation) of the subject merchandise (whether or not it is actually being imported at the time).
Commissioner Pinkert found that the domestic industry was in a vulnerable condition toward the end of the period of investigation, as the wind tower imports grew in volume and market share. He found that the subject imports were 192.8 percent higher in interim 2012 compared with interim 2011, accompanied by substantial increase in market share. ITC Views at *23. He deemed it significant that the price gap between the subject imports and domestic wind towers diminished substantially over the period of investigation. He found that the producers in China and Vietnam had increased their capacity, and that they expected to increase their exports to the United States. He discussed the foreign producers’ increasing dependence on the United States market, in the context of only a moderate increase in United States demand in the near future. He observed that several domestic producers had ceased production or closed plants.
Commissioner Pinkert found threat of “significant loss of revenues” and “declining employment, output, and productivity” in the imminent future, id. at *25, and concluded that the intensifying level of competition from the subject imports would be likely to threaten material injury to the domestic industry, which was already in a loss position. Id.
Siemens states that Commissioner Pin-kert’s finding of threat of material injury was weak and poorly supported, and should not receive equal weight with the findings of no injury. Siemens states that *1372 the finding of threat of injury was based on a perceived downward pricing trend that did not exist. The government characterizes this argument as a misstatement, because Commissioner Pinkert cited the increasing price trend and the shrinking price gap between the imports and the domestic product, and recognized that the domestic industry was under price pressure from the imports and was operating at a loss that was increasing.
Review of the record and argument shows that there was substantial evidence in support of Commissioner Pinkert’s conclusion of threat of material injury. The Court of International Trade correctly sustained this finding.
C. Finding of No Material Injury
Commissioners Pearson, Johanson, and Broadbent found neither material injury nor threat of material injury. These Commissioners found that the investigation data did not establish price underselling, price depression, or price suppression. They recognized the erosion of domestic producers’ market share and profitability, but found that it was not shown that this situation would continue into the future, explaining that the unused production capacity in China had not yet been qualified to meet United States standards and is inconveniently located for shipment to the United States. Siemens argues that the Commission and the Court of International Trade were incorrect in counting Commissioner Pinkert’s vote of threatened injury on the side of material injury. Siemens stresses that four of the six Commissioners found no actual material injury, and argues that the vote was not evenly divided. Siemens also argues that the three Commissioners who found injury or threat of injury failed to consider evidence that “fairly detracts from its weight,” Nippon Steel Corp. v. United States, 458 F.3d 1345, 1351 (Fed.Cir.2006). However, review of the Commission determinations does not support this criticism.
The record shows investigation of and inquiry into the statutory factors, including the competitive characteristics of the imported and domestic wind towers, the nature of the market, the price characteristics of the industry, and the impact of the subject imports on the domestic industry. There was discussion of f.o.b. and delivered costs, the price patterns, and other issues including the allegations of domestic operational inefficiencies.
Although individual Commissioners reached divergent conclusions, “[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency’s finding from being supported by substantial evidence.” Consolo v. Fed. Mar. Comm’n, 383 U.S. 607, 620, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966). The Court of International Trade explained its affirmance of the Commission’s conclusion:
While the court must consider the record as a whole, when the Commission has based its determination on substantial evidence and considered the evidence that fairly detracts from its conclusion, the court may not displace the agency’s choice.
CIT Op. at 1331. We agree that the evidence was such that “a reasonable mind might accept as adequate to support the conclusion.” Universal Camera, 340 U.S. at 477, 71 S.Ct. 456. We conclude that the Court of International Trade correctly upheld the Commission’s affirmative injury determination.
II
The Department of Commerce levied countervailing duties, but limited the duties to imports after the decision date of February 15, 2013, in accordance with the *1373 “Special Rule” of 19 U.S.C. §§ 1671e(b) and 1673e(b), whereby determinations based on threat of injury are prospective only. This aspect was previously sustained by the Court of International Trade, reported at Wind Tower Trade Coal. v. United States, 904 F.Supp.2d 1349 (Ct. Int’l Tr.2013), and affirmed by the Federal Circuit at Wind Tower Trade Coal. v. United States, 741 F.3d 89 (Fed.Cir.2014) (denying injunction in view of the “fragmented voting pattern” where four of the six Commissioners did not find present material injury). Although the Coalition again questions this result, that ruling is the law of this case. We discern no basis for reconsideration.
The decision of the Court of International Trade is
AFFIRMED.

. See Siemens Energy, Inc. v. United States, 992 F.Supp.2d 1315 (Ct. Int’l Trade 2014) (“CIT Op.”); see also Utility Scale Wind Towers from China and Vietnam, 78 Fed. Reg. 10,210 (Int’l Trade Comm'n Feb. 2, 2013) ("ITC Op.”); Utility Scale Wind Towers from China and Vietnam, Inv. Nos. 701-TA-486 and 731-TA-l 195-1196, USITC Pub. 4372, 2013 WL 1155424 (Feb.2013) (Final) ("ITC Views”).