# United States Court of Appeals for the Federal Circuit

---

**KYOCERA SOLAR, INC., KYOCERA MEXICANA S.A. DE C.V.,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES INTERNATIONAL TRADE COMMISSION, SOLARWORLD AMERICAS, INC.,**
*Defendants-Appellees*

---

2016-1348

---

Appeal from the United States Court of International Trade in No. 1:15-cv-00084-NT, Senior Judge Nicholas Tsoucalas.

---

Decided: December 15, 2016

---

JAMES KEVIN HORGAN, DeKieffer & Horgan, PLLC, Washington, DC, argued for plaintiffs-appellants. Also represented by JOHN J. KENKEL, GREGORY S. MENEGAZ, ALEXANDRA H. SALZMAN.

MARY JANE ALVES, Office of the General Counsel, United States International Trade Commission, Washington, DC, argued for defendant-appellee United States International Trade Commission. Also represented by ANDREA C. CASSON, DOMINIC L. BIANCHI.

TIMOTHY C. BRIGHTBILL, Wiley Rein, LLP, Washington, DC, argued for defendant-appellee SolarWorld Americas, Inc. Also represented by STEPHANIE MANAKER BELL, TESSA V. CAPELOTO, LAURA EL-SABAAWI, DERICK HOLT, USHA NEELAKANTAN, MAUREEN E. THORSON.

———————————

Before DYK, O'MALLEY, and STOLL, *Circuit Judges.*

STOLL, *Circuit Judge.*

Kyocera Solar Inc. and Kyocera Mexicana S.A. de C.V. (collectively, "Kyocera") appeal a final determination by the U.S. Court of International Trade ("CIT"). The CIT reviewed and affirmed the International Trade Commission's ("Commission") determination that the statutory text did not support Kyocera's proposed interpretation of the statute. Because we agree that the plain meaning of the statute forecloses Kyocera's proposed interpretation, we affirm.

## BACKGROUND

This case concerns solar modules (i.e., solar panels) that incorporate crystalline silicon photovoltaic ("CSPV") cells from Taiwan. CSPV cells convert sunlight into electricity using mono- or multi-crystalline silicon cells. The CSPV cells are strung together, sealed, laminated, and framed to make solar modules, also known as CSPV modules. CSPV cells are the main electricity-generating component of solar modules.

Kyocera produces and manufactures solar modules abroad and imports them for sale in the United States. The solar modules at issue in this case are ultimately assembled in and imported from Mexico but incorporate Taiwanese CSPV cells. These solar modules were subject to an antidumping duty investigation into CSPV products from China and Taiwan. SolarWorld Industries America,

Inc., an American producer of CSPV cells and modules, had filed antidumping and countervailing duty petitions alleging material injury and threat of material injury to a domestic industry by CSPV product imports from China and Taiwan.

The Department of Commerce ("Commerce") defined the investigation's scope to include cells and modules produced in Taiwan and certain modules "completed or partially manufactured" in other countries. The relevant portion of Commerce's scope definition is reproduced below:

> The merchandise covered by these investigations is crystalline silicon photovoltaic cells, and modules, laminates and/or panels consisting of crystalline silicon photovoltaic cells, whether or not partially or fully assembled into other products, including building integrated materials. For purposes of these investigations, subject merchandise also includes modules, laminates and/or panels assembled in the subject country consisting of crystalline silicon photovoltaic cells that are completed or partially manufactured within a customs territory other than that subject country, using ingots that are manufactured in the subject country, wafers that are manufactured in the subject country, or cells where the manufacturing process begins in the subject country and is completed in a non-subject country.

*Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China and Taiwan*, 79 Fed. Reg. 4661, 4667 (Dep't of Commerce Jan. 29, 2014) (initiating antidumping duty investigations).

Kyocera later challenged Commerce's scope determination and requested that it exclude solar modules produced in Mexico from the investigation's scope, including modules produced in Mexico using CSPV cells manufac-

tured in Taiwan. Commerce declined Kyocera's request. It determined that the investigation would include solar modules produced in Mexico that incorporated Taiwanese CSPV cells. Commerce explained that "[m]odules, laminates, and panels produced in a third-country from cells produced in Taiwan are covered by this investigation." *Certain Crystalline Silicon Photovoltaic Products from Taiwan*, 79 Fed. Reg. 76,966, 76,968 (Dep't of Commerce Dec. 23, 2014) (final determination). Kyocera challenged this scope determination in a separate civil action; Commerce's scope determination is not at issue in this case. *See Kyocera Solar, Inc. v. United States,* CIT Ct. No. 15–00081 (Ct. Int'l Trade filed Mar. 20, 2015).

Using Commerce's scope determination, the Commission determined that an industry within the United States had been materially injured by imports of CSPV products from Taiwan. The Commission explained that it "must defer to Commerce's determination of the scope of the merchandise subject to these investigations, and Commerce has determined that U.S. imports of CSPV modules assembled in third countries such as Mexico from CSPV cells made in Taiwan are U.S. imports of subject merchandise from Taiwan." *Certain Crystalline Silicon Photovoltaic Prods. from China & Taiwan*, Inv. No. 701-TA-511, USITC Pub. 4519 (Feb. 1, 2015) (Final), 2015 WL 10553313, at *13 n.110.

Kyocera nevertheless argued that the Commission had to conduct a separate negligibility analysis regarding Mexican solar panels incorporating Taiwanese CSPV cells. Section 1677(24) of Title 19 of the United States Code defines "[n]egligible imports" as "imports from a country of merchandise corresponding to a domestic like product identified by the Commission . . . account[ing] for less than 3 percent of the volume of all such merchandise imported into the United States in the most recent 12-month period for which data are available that precedes" the filing of the petition or the initiation of the investiga-

tion. 19 U.S.C. § 1677(24). Under 19 U.S.C. § 1673d(b)(1)(B), "[i]f the Commission determines that imports of the subject merchandise are negligible, the investigation shall be terminated." Kyocera argued that this statutory scheme required the Commission to conduct a separate negligibility analysis for its solar modules assembled in Mexico incorporating Taiwanese CSPV cells in contrast to solar modules assembled in Taiwan incorporating Taiwanese CSPV cells. In particular, Kyocera argued that § 1677(24) requires a negligibility analysis for imports from "a country," and that its Mexican imports were from "a country," so the Commission should separately conduct a negligibility analysis to determine whether solar modules imported from Mexico "account for less than 3 percent of the volume" of solar modules imported into the United States. *See* 19 U.S.C. § 1677(24).

The Commission rejected Kyocera's argument, explaining that it reflected both an improper attempt to circumvent Commerce's scope determination and an incorrect reading of the statute:

> Kyocera's arguments are based on two flawed premises. First, Kyocera overlooks that the Commission must defer to Commerce's definition of the scope of the merchandise subject to these investigations, and Commerce has determined that U.S. imports of CSPV modules assembled in third countries such as Mexico from CSPV cells made in Taiwan are U.S. imports of subject merchandise from Taiwan, as discussed earlier. Moreover, Kyocera does not read the negligible imports language in tandem with 19 U.S.C. §§ 1671d(b), 1673d(b), which direct the Commission to determine whether a domestic industry is materially injured "by reason of imports, or sales (or the likelihood of sales) for importation, of the merchandise *with respect to which the administering authority has made an affirmative determina-*

*tion under subsection* (a)(1) of this section. If the Commission determines that *imports of the subject merchandise are negligible*, the investigation shall be terminated." (emphasis added). It is not reasonable to read "any country" into the definition of negligible imports without taking into account that the statute centers the negligibility analysis on the imports of the subject merchandise with respect to which Commerce has made an affirmative determination.

*Certain Crystalline Silicon Photovoltaic Prods. from China & Taiwan*, 2015 WL 10553313, at \*13 n.110.

Kyocera appealed the Commission's determination to the CIT, which affirmed the Commission's refusal to conduct a separate negligibility analysis for Kyocera's solar modules incorporating Taiwanese CSPV cells in Mexican manufacturing plants. It explained that "Kyocera ignores the fact that Commerce's investigation defines the scope of the [Commission's] analysis." J.A. 10. It explained that "[h]ere, Commerce determined that the solar modules produced by Kyocera in Mexico using Taiwanese cells are considered Taiwanese in origin, and are within the scope of this Taiwanese investigation." *Id.* (quotation marks and brackets omitted). The CIT concluded that "the [Commission] was bound by Commerce's determination and tasked with examining whether imports from Taiwan, including modules from Mexico, were negligible. Accordingly, the [Commission] correctly declined to conduct a separate negligibility analysis with Mexico as the country of origin." J.A. 11 (citation omitted).

Kyocera appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

DISCUSSION

We review the CIT's assessment of the Commission's final determination by reapplying the CIT's standard of review. Specifically, we ask whether the Commission's determination is unsupported by substantial evidence or otherwise not in accordance with the law. *Siemens Energy, Inc. v. United States*, 806 F.3d 1367, 1369 (Fed. Cir. 2015). "In undertaking this review, we give great weight to 'the informed opinion of the [CIT].'" *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351 (Fed. Cir. 2006) (quoting *Suramerica de Aleaciones Laminadas, C.A. v. United States*, 44 F.3d 978, 983 (Fed. Cir. 1994)).

Kyocera's appeal raises an issue of statutory construction. We review issues of statutory construction under the two-prong analysis announced in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). We first determine "whether Congress has directly spoken to the precise question at issue." *Id.* at 842. If it has, our inquiry ends, for we "give effect to the unambiguously expressed intent of Congress." *Id.* at 843. If, however, the statute does not answer the question at hand because it is "silent or ambiguous," then, under *Chevron*'s second prong, we determine whether the agency provided "a permissible construction of the statute." *Id.* "If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation." *Id.* at 843–44. "Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 844 (footnote omitted).

We find that this dispute is resolved by the plain meaning of the statute. "In order to determine whether a statute clearly shows the intent of Congress in a *Chevron* step-one analysis, we employ traditional tools of statutory construction and examine 'the statute's text, structure,

and legislative history, and apply the relevant canons of interpretation.'" *Heino v. Shinseki*, 683 F.3d 1372, 1378 (Fed. Cir. 2012) (quoting *Delverde, SrL v. United States*, 202 F.3d 1360, 1363 (Fed. Cir. 2000)). "It is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (quoting *Davis v. Mich. Dep't. of Treasury*, 489 U.S. 803, 809 (1989)). That principle rings particularly true here. The statutory structure before us offers important context that guides our understanding of the disputed text's meaning.

We begin with 19 U.S.C. §§ 1671d(b) and 1673d(b), which outline the Commission's final determination inquiry in countervailing duties and antidumping investigations, respectively. These sections task the Commission with finally determining whether certain imports, those that fall within the scope of a final affirmative antidumping or countervailing duty determination made by Commerce, are harming an industry within the United States. 19 U.S.C. §§ 1671d, 1673d. Section 1671d(b), which is mirrored by § 1673d(b), reads as follows:

(b) Final determination by Commission

(1) In general

The Commission shall make a final determination of whether--

(A) an industry in the United States--

(i) is materially injured, or

(ii) is threatened with material injury, or

(B) the establishment of an industry in the United States is materi-

ally retarded, by reason of imports, or sales (or the likelihood of sales) for importation, of the merchandise with respect to which the administering authority has made an affirmative determination under subsection (a) of this section. If the Commission determines that imports of the subject merchandise are negligible, the investigation shall be terminated.

These sections also require the Commission to conduct a negligibility determination and to terminate the investigation if it "determines that imports of the *subject merchandise* are negligible." *Id.* (emphasis added). This negligibility determination is further defined in 19 U.S.C. § 1677(24), which explains that "imports from a country of merchandise corresponding to a domestic like product identified by the Commission are 'negligible' if such imports account for less than 3 percent of the volume of all such merchandise imported into the United States" in a specified time period.

It is § 1677(24)'s definition of negligible merchandise that Kyocera reads as "direct[ing] the Commission to consider whether 'imports from a country' are negligible." Appellant Br. 20. Kyocera argues that "[t]he language of the statute is not ambiguous. 'A country' means exactly that—a country. Mexico is a country." *Id.* It follows, Kyocera argues, that its imports of solar modules assembled in Mexico incorporating Taiwanese CSPV cells are from Mexico, and thus the Commission should have conducted a separate negligibility analysis for these modules.

We disagree. Kyocera's statutory reading improperly wrests a line of statutory text from its context. *See Brown & Williamson,* 529 U.S. at 133. Here, the statute plainly

requires that the Commission make its determinations with regard to subject merchandise. And the statute vests Commerce with the role of determining the scope of the merchandise subject to investigation. *See* 19 U.S.C. §§ 1671d(b), 1673d(b); *see also* 19 U.S.C. §§ 1671e(a)(2), 1673e(a)(2) (explaining that Commerce shall include in antidumping and countervailing duty orders "a description of the subject merchandise, in such detail as [Commerce] deems necessary"). Indeed, the negligibility determination requires an inquiry into whether "imports of the *subject merchandise* are negligible." 19 U.S.C. §§ 1671d(b)(1), 1673d(b)(1). And the statute defines "subject merchandise" as "the class or kind of merchandise that is within the scope of an investigation." 19 U.S.C. § 1677(25). Thus, the Commission's determinations of domestic injury and negligibility are made with respect to the subject merchandise—i.e., the merchandise within the scope of Commerce's investigation. We therefore agree with the Commission's observation that "[i]t is not reasonable to read 'any country' into the definition of negligible imports without taking into account that the statute centers the negligibility analysis on the imports of the subject merchandise with respect to which Commerce has made an affirmative determination." *Certain Crystalline Silicon Photovoltaic Prods. from China & Taiwan,* 2015 WL 10553313, at *13 n.110.

Moreover, Kyocera cannot challenge Commerce's determination that the solar modules finally assembled in Mexico are Taiwanese in origin. Indeed, Kyocera "does not dispute" that "[t]he Commerce Department determined that solar products produced in Mexico from Taiwanese origin cells[] are subject merchandise and Taiwanese in origin." Appellant Reply Br. 4. In fact, that very determination is the subject of a separate civil proceeding in the CIT, *see* CIT Ct. No. 15–00081, filed by Kyocera. And both parties agree that Commerce's scope determination is not before us today. Kyocera argues,

however, that "the Commission is required to examine the negligibility of subject merchandise (in this case, Taiwanese origin solar products produced in Mexico) *imported from Mexico.*" Appellant Br. 4. We disagree. The statute does not support Kyocera's proposed distinction between Commerce's determination of origin and the origin of goods referred to in the negligibility statute. As we explained above, the statute centers the negligibility determination on subject merchandise. In this case, Commerce determined that the solar modules that Kyocera claims are "from Mexico" are Taiwanese in origin. Following the statutory structure, the Commission properly treated the cells as Taiwanese in origin, and thus correctly refused to conduct a separate negligibility determination for Kyocera's solar cells.

We have considered Kyocera's remaining arguments and find them unpersuasive.

CONCLUSION

Because we find Kyocera's position unambiguously refuted by the plain meaning of the statute, we conclude our analysis under the first prong of *Chevron* and do not reach its second prong. As Kyocera does not otherwise challenge the Commission's determination, we affirm.

**AFFIRMED**

COSTS.

No Costs.