147 T.C. No. 11

UNITED STATES TAX COURT

ESTATE OF JAMES HELLER, DECEASED, BARBARA H. FREITAG, HARRY H. FALK, AND STEVEN P. HELLER, CO-EXECUTORS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11390-12.                    Filed September 26, 2016.

E held a 99% interest in L, which held an account with MS as its only asset. L distributed to E a portion of the funds from the MS account, and E used those funds to pay estate taxes and administrative expenses. Before E could distribute its remaining assets to D's beneficiaries, MS' chairman was arrested on, and pleaded guilty to, charges relating to a Ponzi scheme. As a result of the Ponzi scheme, the MS account became worthless, and E, on its Federal estate tax return, deducted a theft loss relating to its interest in L.

In a notice of deficiency issued to E, R determined that E was not entitled to an I.R.C. sec. 2054 theft loss deduction. E challenged the determination and moved for summary judgment. R objected, contended that L owned the MS account, and moved for partial summary judgment.

Held: E, pursuant to I.R.C. sec. 2054, is entitled to a deduction relating to its interest in L.

Christopher W. Campbell, Ryan M. Austin, and Theresa R. Clardy, for

petitioners.

Peter N. Scharff, for respondent.


OPINION


FOLEY, Judge:  This matter is before the Court pursuant to Rule 121 on the

estate's motion for summary judgment and respondent's motion for partial

summary judgment.[1]  After concessions, the sole issue for decision is whether the

estate is entitled to a section 2054 deduction.

### Background

James Heller, a resident of New York, New York, died on January 31,

2008.[2]  At that time he owned a 99% interest in James Heller Family, LLC (JHF).

James Heller's daughter, Barbara H. Freitag, and his son, Steven P. Heller, each

held a 0.5% interest in JHF.  Harry H. Falk managed JHF, the only asset of which

---

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code relating to the date of decedent's death, and all Rule references are
to the Tax Court Rules of Practice and Procedure.

[2]James Heller's will was probated in New York.  The estate and coexecutors
had a mailing address in New York when the petition was filed.  The record does
not disclose where the coexecutors resided when the petition was filed.

was an account (JHF Madoff account) with Bernard L. Madoff Investment Securities, LLC (Madoff Securities). On or around March 5, 2008, Ms. Freitag, Mr. Falk, and Steven P. Heller were appointed coexecutors of the Estate of James Heller (estate). Between March 4 and November 28, 2008, Mr. Falk withdrew $11,500,000 from the JHF Madoff account and distributed it according to JHF's ownership interests. The estate's share, $11,385,000, was used to pay its taxes and administrative expenses.

On December 11, 2008, Bernard Madoff, the chairman of Madoff Securities, was arrested, and the Securities and Exchange Commission issued a press release to alert the public that it had charged him with securities fraud relating to a multibillion-dollar Ponzi scheme. In perpetuating the scheme Mr. Madoff and his associates fabricated monthly and quarterly statements (i.e., financial records that purportedly showed the value of accounts, trading activity, gains, and other financial information) and sent them to Madoff Securities' clients. The Securities Investor Protection Corporation (SIPC), on December 15, 2008, filed an application for a protective decree with the U.S. District Court for the Southern District of New York, in which it, pursuant to the Securities Investor Protection Act of 1970, sought liquidation of Madoff Securities. On that day the court approved the application and appointed a trustee for Madoff Securities. Mr.

Madoff, on March 12, 2009, admitted that he had perpetrated a Ponzi scheme through Madoff Securities and pleaded guilty to various Federal crimes, including securities fraud, investment adviser fraud, money laundering, and perjury. As a result of the Ponzi scheme, JHF's interest in the JHF Madoff account and the estate's interest in JHF became worthless.[3]

The estate on April 1, 2009, timely filed Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return, on which the estate reported a $26,296,807 gross estate, including the value of James Heller's 99% interest in JHF (i.e., $16,560,990). The estate also claimed a $5,175,990 theft loss deduction relating to the Ponzi scheme, the amount of which reflects the difference between the value of the estate's interest in JHF reported on the estate tax return and the estate's share of the amounts withdrawn from the JHF Madoff account.[4] Respondent on February 9, 2012, issued the estate a notice of deficiency in which

[3]From 1990 through 2007 James Heller contributed $6,052,000 to, and withdrew $12,429,781 from, an account he held directly with Madoff Securities. On December 19, 2006, JHF contributed $150,000 to the JHF Madoff account, and on January 3, 2007, James Heller transferred an additional $14,850,000 from his account to the JHF Madoff account.

[4]On May 31, 2011, the estate filed with respondent a protective refund claim relating to the Madoff Securities trustee's claims against the estate (i.e., to recover amounts withdrawn from the JHF Madoff account before the Ponzi scheme became public knowledge).

respondent determined that the estate was not entitled to the $5,175,990 theft loss deduction because the estate did not incur a theft loss during its settlement.

The estate timely filed a petition with the Court, and the Court subsequently filed the estate's motion for summary judgment and respondent's motion for partial summary judgment.

## Discussion

The estate is entitled to deductions relating to "losses incurred during the settlement of * * * [the estate] arising * * * from theft". See sec. 2054. Whether an estate is entitled to a section 2054 theft loss deduction relating to property held by an LLC is an issue of first impression. Neither regulations nor legislative history relating to section 2054 or its predecessors addresses this issue. Thus, our analysis begins and ends with the statute.

The estate tax is imposed on the value of property transferred to beneficiaries. See secs. 2001, 2031(a), 2051. In that context, a loss refers to a reduction of the value of property held by an estate. See Black's Law Dictionary 1087 (10th ed. 2014) (defining a loss as "the disappearance or diminution of value"). While JHF lost its sole asset as a result of the Ponzi scheme, the estate, during its settlement, also incurred a loss because the value of its interest in JHF decreased from $5,175,990 to zero.

Respondent concedes that Madoff Securities defrauded JHF but contends that the estate is not entitled to a section 2054 deduction because JHF incurred the loss. In support of this contention, respondent emphasizes that pursuant to New York law, JHF, not the estate, was the theft victim. Section 2054, however, allows for a broader nexus (i.e., between the theft and the incurred loss) than does respondent's narrow interpretation. "Arise" is generally defined as "to originate from a source". See Merriam-Webster's Collegiate Dictionary 62 (10th ed. 2001). Pursuant to the phrase "arising from" in section 2054, the estate is entitled to a deduction if there is a sufficient nexus between the theft and the estate's loss. See White v. Commissioner, 48 T.C. 430, 435 (1967) (finding a similarity between losses caused by direct and proximate damage of a section 165(c)(3) "other casualty" and those arising from the specifically enumerated section 165(c)(3) causes).[5] It is sufficient indeed. The nexus between the theft and the value of the estate's JHF interest is direct and indisputable. The loss suffered by the estate relates directly to its JHF interest, the worthlessness of which <u>arose from</u> the theft.

---

[5]See also Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1361 (2d Cir.1993) (finding no substantive difference among the phrases "relating to", "in connection with", and "arising from"); United States v. Bradford, 433 F. Supp. 2d 1001, 1003 (N.D. Iowa 2006) ("In the federal common law of contracts, 'arising from' is a broad contractual phrase that encompasses almost any causal connection or relationship.").

Thus, the estate is entitled to a section 2054 deduction relating to its JHF interest. We need not address whether a mere tangential or more circuitous relationship would suffice.

Our construction is in accordance with, and buttressed by, the purpose of the estate tax. See FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133 (2000) ("It is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" (quoting Davis v. Mich. Dep't of Treasury, 489 U.S. 803, 809 (1989))). While the estate tax is imposed on the value of property transferred to beneficiaries, estate tax deductions are designed to ensure "that the tax is imposed on the net estate, which is really what of value passes from the dead to the living." See Jacobs v. Commissioner, 34 B.T.A. 594, 597 (1936). The theft extinguished the value of the estate's JHF interest, thereby diminishing the value of property available to James Heller's heirs. Thus, the estate's entitlement to a section 2054 deduction is consistent with the overall statutory scheme of the estate tax.

The estate has established that no genuine dispute of material fact exists and that it is entitled to judgment as a matter of law. See Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994).

Accordingly, pursuant to Rule 121, summary judgment in favor of the estate is appropriate.

Contentions we have not addressed are irrelevant, moot, or meritless.

To reflect the foregoing,

<u>An appropriate order will be issued, and decision will be entered under Rule 155</u>.