T.C. Memo. 2017-30

UNITED STATES TAX COURT

PETER WILLIAM MOSS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5287-12. Filed February 8, 2017.

Peter William Moss, pro se.

<u>Rose E. Gole</u> and <u>Gennady Zilberman</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WELLS, <u>Judge</u>:  Respondent determined a deficiency of $14,540 in

petitioner's 2008 Federal income tax and an accuracy-related penalty of $2,908

pursuant to section 6662(a).[1]  Before trial respondent conceded the penalty and

---

[1]Unless otherwise indicated, section references are to the Internal Revenue

(continued...)

[*2] reduced the deficiency determination to $1,467. After concessions, we must decide whether petitioner is entitled to (1) married filing jointly status, (2) an exemption deduction for his wife, and (3) an overpayment carryover of $823 from his 2007 return.

FINDINGS OF FACT

At the time of the filing of his petition, petitioner resided in Darien, Connecticut. Petitioner timely filed a 2008 joint income tax return. On the tax return, petitioner claimed married filing jointly status, personal exemptions for himself and his wife, and an $823 overpayment from their previous year's joint income tax return. Petitioner's wife, however, refused to sign the 2008 return. Petitioner nevertheless filed the return and attached to it a letter stating that his wife is seriously mentally ill, that the Internal Revenue Service (IRS) should disregard all information she sends, and that the return included her income for 2008 as well as his. Petitioner did not attach any power of attorney that would authorize him to act on behalf of his wife. Mrs. Moss never submitted to respondent any consent for petitioner to file the 2008 return for her.

---

[1](...continued)
Code of 1986, as amended and in effect for the year in issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

**[*3]**   Mrs. Moss apparently insisted on filing a separate return in April 2009 because she believed she was entitled to a theft loss deduction.  Petitioner believes that Mrs. Moss' mental illness, for which she was hospitalized in 2005 and 2006, left her highly suggestible to news programs covering the "Madoff fraud"[2] and led to the delusion that she had lost $350,000 in 2008.  In fact, she had no investments affected by the Madoff fraud.  By this time, petitioner believed he served a guardianship function for his wife because a condition of her hospital release in 2006 was that she live with him.  To avoid worsening the rift in their relationship caused by her hospitalization, however, petitioner did not seek any official status as a conservator, holder of a power of attorney, or guardian of his wife.  It was not until August 2013 that a Connecticut probate court placed Mrs. Moss into a conservatorship, appointing her daughters as conservators.  Thus, petitioner had no formal power of attorney or similar authorization when he prepared the 2008 return on his and Mrs. Moss' behalf.

In her separately filed return Mrs. Moss checked the "Married filing separately" box.  She reported $17,571 in Social Security and taxable interest income, total tax of $1,157, and total payments of $10,156 of unknown source and

---

[2]For a brief explanation of the Madoff fraud scheme, see Estate of Heller v. Commissioner, 147 T.C. ___ (Sept. 26, 2016).

[*4] without instruction as to the overpayment. The entry for "amount applied from 2007 return" was left blank. The return also included a Form 4684, Casualties and Thefts, showing $350,000 in losses. Mrs. Moss reported the result of the Form 4684 calculation on her Schedule A, Itemized Deductions, but claimed only $9,000 in itemized deductions. The filing of a separate return was a significant departure for Mrs. Moss; the 2008 tax year was the only instance, from 1966 to 2011, in which she filed a separate return.

The IRS accepted Mrs. Moss' return but apparently few, if any, of its figures. The IRS assessed $738 in tax and recognized no credits or payments. After receiving no payments, the IRS levied on Mrs. Moss' Social Security payments to satisfy her balance.

On December 2, 2011, respondent issued a notice of deficiency to petitioner for the taxable year 2008, changing petitioner's filing status from married filing jointly to married filing separately. On the basis of this adjustment, respondent made computational and statutory changes to petitioner's standard deduction and the amount of taxable Social Security income. Respondent also disallowed one of petitioner's claimed personal exemptions. Respondent, however, did not remove Mrs. Moss' income from the total gross income shown on petitioner's return.

**[\*5]**   In the petition, petitioner reiterated what he had written in the letter attached to his return:  that his wife is mentally ill and that the IRS should not have accepted her return because it was, on its face, delusional.  Additionally, petitioner objected to the notice of deficiency because it showed no exemption for his wife but still included income attributable to her.  As stated above, respondent conceded that the deficiency amount must be reduced to reflect the removal of all income attributable to Mrs. Moss and also conceded the section 6662(a) accuracy-related penalty.

Petitioner continues to contend, however, that his wife's 2008 return is invalid and that the IRS should not have accepted it.  He contends that the proper remedy is for this Court to invalidate Mrs. Moss' 2008 return, accept the original return showing married filing jointly status, and determine that there is no deficiency. Petitioner also contends that he is entitled to the full $823 he claimed as an overpayment from the 2007 tax year, and not the $412 calculated by respondent.

OPINION

We exercise jurisdiction pursuant to section 6214(a).  As a general rule, the Commissioner's determinations in the notice of deficiency are presumed correct,

**[*6]** and the taxpayer bears the burden of proving an error.  Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).

I.      <u>Filing Status</u>

A taxpayer may claim married filing jointly status if he and his spouse are legally eligible to file jointly and in fact do so.  <u>See</u> secs. 1(a), 6013; <u>Columbus v. Commissioner</u>, T.C. Memo. 1998-60, <u>aff'd without published opinion</u>, 162 F.3d 1172 (10th Cir. 1998).  As a general rule, both spouses must sign a joint return.  Sec. 1.6013-1(a)(2), Income Tax Regs.; <u>see also</u> <u>Downing v. Commissioner</u>, T.C. Memo. 2007-291, 2007 WL 2768754, at *9.  Because Mrs. Moss did not sign the return in issue, it does not comply with the requirements for a joint return.  <u>See</u> sec. 1.6013-1(a)(2), Income Tax Regs.  There are, however, two circumstances in which a return may be accepted as jointly filed even though it is signed only by one spouse:  when a taxpayer acts as an authorized agent for his or her spouse, sec. 1.6061-1(a), Income Tax Regs., and when there is sufficient evidence that, despite the lack of a signature, the spouse consented to filing jointly, <u>Estate of Campbell v. Commissioner</u>, 56 T.C. 1, 12 (1971); <u>Strong v. Commissioner</u>, T.C. Memo. 2001-103, 2001 WL 436125.

**[\*7]**   A. Agency Theory

When a person is unable to make a return, "the return of such individual shall be made by a duly authorized agent, his committee, guardian, fiduciary or other person charged with the care of the person or property of such individual." Sec. 6012(b)(2).  Disease, illness, or continuous absence from the United States are all reasons for which a person may be unable to make a return.  Sec. 1.6012-(a)(5), Income Tax Regs.  Even when such a person is a disabled spouse, the would-be duly authorized agent must comply with the provisions of section 1.6012-1(a)(5), Income Tax Regs.  Sec. 1.6013-1(a)(2), Income Tax Regs.  These provisions require that the return be accompanied by (1) an IRS Form 2848, Power of Attorney and Declaration of Representative, or, a power of attorney authorizing the agent to represent the taxpayer in making, executing, or filing the return; (2) a statement signed by the spouse who is signing the return confirming that the incapacitated spouse consents to the signing of the return; or (3) a request for permission from, and determination made by, the appropriate IRS district director[3]

_____

[3]At the time the return in issue was filed, the district director position no longer existed.  See Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105-206, sec. 1001(a), 112 Stat. at 689 (directing the Commissioner to reorganize the IRS); Notice 2003-19, 2003-1 C.B. 703.  In April 2009 the permission request should have been sent to the Submission Processing Center where the return was to be filed.  Notice 2003-19, 2003-1 C.B. 703.

**[\*8]** that good cause exists for permitting an agent to submit the return. Sec. 1.6012-1(a)(5), Income Tax Regs.

Petitioner has failed to show that in April 2009 his wife was unable to file a return, and, even if she were unable, that he qualified as her agent when he filed the joint return. Petitioner contends that his wife could not file a valid return because of her mental illness. However, a person's previous commitment to a hospital and a spouse's assertion of mental illness are not sufficient to invalidate an individual's right to file his or her own return. See Conn. Gen. Stat. Ann. secs. 1-43 (West 2007), 1-54(West 1965) (repealed 2016), 45a-670 (West 2014), 45a-677 (West 2014). But see Rev. Rul. 56-22, 1956-1 C.B. 558. The conservatorship order issued over four years after the return was filed does not satisfy petitioner's burden to prove that his wife was incapable of filing her own return in April 2009.

Furthermore, petitioner has not shown that he qualifies as his wife's agent. Petitioner had no power of attorney or Form 2848 to attach to the return. Petitioner did not file a statement confirming that Mrs. Moss consented to the signing of the return. Indeed, he filed a statement that she refused to sign the return. At the time of the filing of the return, it appears no one other than Mrs. Moss had the authority to file a return on her behalf. See Conn. Gen. Stat. Ann. secs. 1-43, 1-54, 45a-670, 45a-677; sec. 1.6012-3(b)(3), Income Tax Regs. Mrs.

**[\*9]** Moss was eventually placed in a conservatorship, but this occurred over four years after the filing of the return in issue. Additionally, Mrs. Moss' daughters, not petitioner, were appointed as her conservators.

Accordingly, even if we were to conclude that Mrs. Moss was unable to file a return in 2009, which we do not, petitioner was not her duly authorized agent. He did not comply with the provisions of section 1.6012-1(a)(5), Income Tax Regs., and therefore cannot claim that he properly filed a joint return with his wife as her agent.

B. Consent Theory

Alternatively, a joint return may be found, even without a spouse's signature, if there is other evidence that the husband and wife intended to file a joint return. See Heim v. Commissioner, 27 T.C. 270, 273 (1956), aff'd, 251 F.2d 44 (8th Cir. 1958); Strong v. Commissioner, 2001 WL 436125. In Strong, the Court found that such an intent existed when there was a history of the husband's signing for his wife; the pattern continued even after the taxpayers separated; the wife provided the husband with her Forms W-2, Wage and Tax Statement, so that he could prepare the joint return; and she did not file a separate return until years after the joint return had been filed and accepted. Strong v. Commissioner, 2001 WL 436125, at \*11.

**[*10]**  Although petitioner and Mrs. Moss have a long history of filing jointly, there is no dispute that Mrs. Moss did not intend to file a joint return for the 2008 tax year.  She expressly refused to sign the 2008 joint return and filed a timely return of her own.  Because the evidence shows that Mrs. Moss intended not to file a joint return, we cannot, under this theory, find that petitioner filed a joint return.

II.    Exemption

Personal exemptions allowed by section 151(b) serve as deductions against income.  Where a joint return is filed, a section 151(b) exemption is allowed for both the taxpayer and his or her spouse.  Sec. 1.151-1(b), Income Tax Regs.  Where a joint return is not filed, a taxpayer may claim an exemption for his spouse only if "the spouse, for the calendar year in which the taxable year of the taxpayer begins, has no gross income and is not the dependent of another taxpayer."  Id.  Conversely, where a taxpayer's spouse files a separate return and has his or her own gross income, a taxpayer is not entitled to a personal exemption for the spouse.  Von Tersch v. Commissioner, 47 T.C. 415, 421 (1967); Turner v. Commissioner, T.C. Memo. 2004-251, 2004 WL 2475296, at *4.

We have held that petitioner did not file a joint return.  Mrs. Moss reported Social Security and interest income on her separately filed 2008 return, and there

**[*11]** is no dispute that she did in fact receive some income.  Petitioner is therefore not entitled to a personal exemption for his wife for tax year 2008.

III.    Overpayment

Under section 6402(a) the IRS is authorized to credit a taxpayer's overpayment against his tax liabilities.  We do not have jurisdiction to restrain or review any credit by the IRS under section 6402.  Sec. 6512(b)(4); Bocock v. Commissioner, 127 T.C. 178 (2006).  We do, however, have jurisdiction to determine whether a taxpayer has made an overpayment of tax and in what amount.  Sec. 6512(b)(1).  To determine whether there is an overpayment for the year for which the Commissioner has determined a deficiency, we may take into account payments by the taxpayer.  Naftel v. Commissioner, 85 T.C. 527, 533 (1985); see also Bolnick v. Commissioner, 44 T.C. 245 (1965).  One type of payment we may consider is a different year's overpayment claimed by a taxpayer on the return.  See Naftel v. Commissioner, 85 T.C. at 532.

Petitioner's 2008 return shows that he claimed the full overpayment of $823 from the joint 2007 return.  Respondent contends that half of the credit is allocable to petitioner and half to his wife.  However, at trial respondent conceded that Mrs. Moss did not claim any of the overpayment; her 2008 return shows a blank space

[*12] for the 2007 overpayment entry.[4]  Furthermore, at the time the notice of deficiency was issued, respondent had not credited Mrs. Moss with any of the 2007 overpayment and had instead issued levies to collect her 2008 tax liability. Accordingly, we find that when petitioner filed his return and when the notice of deficiency was issued, respondent had not allocated half of the overpayment to Mrs. Moss.  Petitioner is therefore entitled to a credit of the entire 2007 overpayment he claimed against his 2008 liability.

IV.    Conclusion

Petitioner is not entitled to either married filing jointly status or the additional personal exemption that follows.  However, petitioner's payments for 2008 do include the full $823 overpayment from 2007.  Also, as conceded by respondent, petitioner is not liable for the accuracy-related penalty and his deficiency must be reduced to reflect the removal of all income attributable to his wife.

---

[4]We note that the regulations allow spouses to assign the entirety of a joint return overpayment to the liability shown on one spouse's separately filed return. Sec. 1.6654-2(e)(5)(ii)(A), Income Tax Regs.

**[*13]**  To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.